HIRAM WOMBLE HOLT, PLAINTIFF IN ERROR, v. UNITED SECURITY LIFE INSURANCE AND TRUST COMPANY, DEFENDANT IN ERROR.

Submitted March 25, 1907—Decided June 17, 1907.

A trust company agreed to make a loan of money, to be advanced when a building, to cost a certain sum, was completed. The loan was to be made when security was furnished; consisting of a life insurance policy of the borrower and another, the payments of the premiums upon which policies were to be secured by bonds and real estate mortgages. After the application for insurance was accepted, and the bond and mortgage delivered, and the mortgage placed on record by the trust company, the latter announced that it would not make the loan. *Held,* that the contract was complete, and did not lack a consideration. *Held,* that upon the repudiation of the contract by the trust company, a right of action for its breach arose at once, and the borrower need not await the arrival of the date when the building was to be completed.

On error to the Supreme Court.

For the plaintiff in error, *Eli H. Chandler* and *George A. Bourgeois.*

For the defendant in error, *Lewis Starr.*

The opinion of the court was delivered by

REED, J.   This action was brought to recover damages for an asserted breach of a contract entered into by the United Security Life Insurance and Trust Company with the plaintiff, Holt.  By the terms of this contract the trust company was to loan the plaintiff $32,500.

The action was brought, *first,* for the repudiation of the contract by the trust company; *secondly,* for damages arising after its repudiation of the contract, for defendant's refusal to cancel two mortgages given by the plaintiff to secure the mentioned loan.

At the close of the plaintiff's case the court directed a nonsuit, and this writ brings up the judgment entered thereon.

The defendant, as its name implies, is a corporation exercising a mingled trust and life insurance business.   It loans money upon security which consists of policies upon the life of.the borrower, and also of mortgages upon real estate.

In 1899 one Chapman had entered into a contract with one Sarah M. Price to purchase from the latter a lot of land at the corner of Pacific and South Carolina avenues, in Atlantic City, upon which lot there stood a frame boarding-house. Chapman wished to remove the old structure and build in its stead an apartment house.   Chapman applied to the life insurance and trust company for a loan to enable him to erect the new structure.   His application was for a loan of $40,000. After negotiation, the defendant agreed to loan him $32,500. The money loaned was to be advanced upon condition that a brick hotel should be erected on the said lot of land, to cost at least $35,000, the hotel to be finished on or before September 1st, 1900.  The money, as is perceived, was to be advanced under this agreement when the building was completed, but it was to be secured by present mortgages upon the lot upon which the building was to be erected and by life insurance

policies written upon the life of the plaintiff and upon the life of Chapman.

The following is the course which the negotiations which resulted in that agreement took: It appears that Chapman, who held an agreement, as already remarked, for the purchase of the land to be mortgaged to the defendant, feared he would not be able to secure his wife's signature to a mortgage. He therefore arranged with the defendant to have the title to the property taken in the name of the plaintiff, Holt, who thereafter held the legal title to the use of Chapman. It was arranged with the defendant that the application for one-half of the entire loan should be made by Holt and another application for one-half the loan should be made by Chapman. Chapman made his application for a loan of $16,250 under date of October 10th, 1889, and Holt made a similar application for the same amount under date of December 1st, 1899. Each application sets out facts respecting the value and condition of the property to be mortgaged, as well as facts respecting the habits, physical and mental condition of the applicant as a basis for an insurance upon his life. These applications were delivered to the defendant. Subsequently, on January 19th, 1900, life insurance agreements were signed, one by Holt and the other by Chapman. Each agreement recited the payment to the party whose life was insured the sum of $16,250 by the trust company. Each agreement contained a covenant that the insured party should pay to the life insurance and trust company, for a term of twenty years, or, if he dies sooner, to pay during his life, the sum of $427.70 quarterly each year; also, a covenant that, for the purpose of securing such payment and for the performance of other covenants in the agreement, such party should give to the trust company a bond and warrant of attorney in the penal sum of $32,500, secured by a mortgage upon the described premises.

On the same day, January 19th, 1900, two bonds and warrants of attorney were signed by the obligors, conditioned for the payments mentioned in the insurance agreement. On the same day Holt executed two mortgages on the property in

question to secure the payment mentioned in the bonds.
These papers were all delivered to the trust company, accepted by it, and the mortgages were put on record by the said company on February 16th, 1900.

All the conditions upon which the loan was to be made under the original agreement were performed by the plaintiff. Not only was there a promise by the trust company to make the loan, but the promise was grounded upon a good consideration. Apart from the question whether the promise to pay premiums under the life insurance agreement was a consideration for a promise to loan $32,500, there was involved in the contract other acts to be done by the plaintiff which raised a consideration. In the performance of his part of the agreement the plaintiff had incurred indebtedness for medical examiners' fees incurred in perfecting his application for life insurance. He had also proceeded to make contracts with materialmen upon the faith of the advancement of this money. He had executed a bond and mortgage, and had permitted the title to his property to be clouded by the existence and record of the latter instrument. These acts done or permitted to the detriment and prejudice of plaintiff constituted a good consideration. *Shadwell* v. *Shadwell,* 9 *C. B.* (*N. S.*) 159; *S. C.,* 6 *Rul. Cas.* 9, and notes; *Conover* v. *Stillwell,* 5 *Vroom* 54.

At the close of the plaintiff's case he was nonsuited. The ground on which the nonsuit was directed seems to have been that Chapman had notified the trust company that he was unable to complete the building without help, and that up to the 18th of April there was no notice given to the trust company that Chapman had entered into any contract for assistance by any outside party; that the defendant was thus in position entitling it to rescind the original contract, and that it did rescind it by notice contained in a letter dated April 18th, 1900. The process of reasoning which led to the nonsuit therefore rested upon the premise that Holt and Chapman had contracted to erect a hotel personally, without outside assistance.

A careful inspection of the record, however, fails to disclose

that the contract entered into imposed upon either Chapman or Holt such a duty. The terms of what had been understood to be the contract appear in a letter addressed to Mr. Chandler, the attorney for the defendant, dated March 6th, 1900. In this letter the officer of the company says: "You will remember that this loan was approved for $32,500 on the completion of a brick building to cost $35,000, exclusive of the lot and clear of liens." This letter was written as part of negotiations between the parties looking to a modification of the original agreement. The plaintiff wished to receive a portion of the loan before the completion of the building. The trust company had proposed to accede to this desire upon the condition that the plaintiff would procure a bond securing the trust company that the building would be completed. Such a bond seems not to have been executed before April 18th, 1900, and therefore the proposition was naturally abandoned. These negotiations in no way altered the position of the parties under the original agreement. The trust company was still to advance the money on the completion of the building.

The only other occurrence bearing upon the condition of affairs on April 18th, 1900, the day of the alleged rescission, is that a short time before that date Mr. Chandler had told Mr. Verner, the president of the defending company, that Chapman himself would not be able to go on and build the building as his own contractor, and that he had made, or was about to make, arrangements with a Mr. Souder to execute the same. It is testified that Mr. Verner then told Mr. Chandler that he thought he was taking the right course. Mr. Chandler also says that he told Mr. Verner that Chapman wanted to make some financial arrangements to secure a second mortgage, and he had secured that from Mr. Souder.

It thereafter appears that Mr. Chandler must have written to the trust company respecting an arrangement to give the contract for building the house to someone, for under the date of March 22d, 1900, Mr. Verner writes to Mr. Chandler as follows: "I think you are now on the right track to give the

contract to somebody who will finish the house. The money will be waiting for him at its completion."

Although subsequent to April 18th a bond and mortgage seems to have been made to Souder for $13,500, that fact does not affect the situation as it existed on the date mentioned. It therefore appears that the contract was that the building should be completed at a certain time, but there was nothing in the contract which prevented the plaintiff from having it completed in any way he saw fit, either personally or by contract, and with or without outside assistance. This being so, there was no statement by Chapman or Holt or their attorney that the building was not to be completed according to contract. The only statement was that it would be built by means of a contract with some other person, and this statement was assented to, as appears by the letter last mentioned.

It seems impossible, therefore, to discover in the conduct of the plaintiff or Chapman anything which gave the defendant a right to rescind the contract on April 18th, 1900, and to write: "We do not desire to make the proposed loan upon the premises at the southwest corner of South Carolina and Pacific avenues, Atlantic City, New Jersey." This was a distinct refusal by the company to perform its contract, and was a final refusal, as appears by subsequent intercourse between the parties respecting the cancellation of the record of the mortgages given to secure the loan.

It thus appearing that no conduct of the plaintiff had invested the trust company with right to rescind the contract, the question arises whether, by such refusal to perform, a right of action arose against the trust company for breach of its contract, notwithstanding the failure of the plaintiff to subsequently perform his part of the contract, no house being built on or before September 1st, 1900.

The right to bring an action against the party who had renounced his contract, and communicated such renunciation to the plaintiff without waiting for the day of performance, was settled in the British courts by the leading case of *Hochster* v. *De La Tour,* decided by the Court of Queen's Bench in 1853, and reported in 2 *El. & B.* 678; *S. C.,* 6 *Eng. Rul. Cas.*

576, with notes. This case has been followed by every subsequent decision in those courts. The rule announced therein has been limited in particulars which are unimportant in the decision of the present case. The doctrine announced in *Hochster* v. *De La Tour, supra,* as appears from the line of cases exhibited in the learned opinion of Mr. Justice Pitney, delivered in the Supreme Court in the case of *O'Neill* v. *Supreme Council American Legion of Honor,* 41 *Vroom* 410, is supported by a very great weight of authority in this country. We agree with the conclusions reached by the Supreme Court in that case, and think that the doctrine announced in the leading case was sound.

The repudiation of the contract alone dispensed the plaintiff from his part of the agreement. *Anders. Cont.* 1219 (*marg.*); *Zenas* v. *Danube and Black Sea Railroad Co.,* 11 *C. B.* (*N. S.*) 151, 175; *Cort* v. *Ambergate, &c., Railway Co.,* 17 *Q. B.* 127; *Ripley* v. *McClure,* 4 *Exch.* 345; *Morgan* v. *Bain, L. R.,* 10 *C. P.* 15; *Blackburn* v. *Reilley,* 18 *Vroom* 290; *Skillman Hardware Company* v. *Davis,* 24 *Id.* 144.

Recognizing this rule, Lord Campbell, in closing his observation in Hochster *v.* De La Tour, remarked: "If it should be held that, upon a contract to do an act upon a future date, renunciation of the contract by one party dispenses with the condition to be performed in the meantime by the other, there seems no reason for requiring the other to wait until the date arrives before seeking his remedy by action, and the only ground upon which the condition can be dispensed with seems to be the renunciation, which may be treated as breach of contract."

The judgment of nonsuit should be reversed.

*For affirmance*—THE CHANCELLOR, VROOM, GRAY, J.J.   3.

*For reversal*—THE CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, REED, TRENCHARD, BOGERT, VREDENBURGH, GREEN, DILL, J.J.   11.