FRANK C. GRUEN, DEFENDANT IN ERROR, v. GEORGE A. OHL & COMPANY, PLAINTIFF IN ERROR.

Submitted March 27, 1911—Decided June 19, 1911.

1. Upon a sale of specific goods, if there is no contract, express or implied, or usage of trade to the contrary, and the goods are to the knowledge of the parties, when the sale is made, in a certain place, that place is the place of delivery ; but if both parties treat the contract as an executory contract of sale and the vendor removes the goods, he must then tender delivery before he can put the vendee in default for non-payment of the purchase price.
2. Where a vendor, without delivering or tendering a delivery to the vendee of specific goods sold, sells them to a third person, neither the vendee nor his assignee need tender the purchase price to the vendor in order to put the latter in default.
3. Where the vendor has incapacitated himself to perform by selling the specific goods to a third person, the vendee need not in order to excuse his failure to perform a concurrent condition of tendering the purchase price, prove that he knew that the vendor had incapacitated himself to perform ; it is the vendor's incapacity, not the vendee's knowledge thereof, that excuses the vendee from performance on his part.
4. Where the vendor in an executory contract of sale fails to perform his contract, the buyer has the right, if the goods are of such a nature that there is no fixed market value, to purchase similar goods as nearly as he can without paying an extravagant price ; he is bound to get the cheapest substitute that will answer the description of what he bought, and may hold the vendor for the difference between what he is obliged to pay and the agreed purchase price.
5. In case of a failure of the vendor of a second-hand machine to make delivery, and the purchase by the vendee of a new machine as a substitute, it is for the vendor, if he so desires, to request a charge that the jury make proper allowance for the difference of value between new and second-hand.

On error to the Supreme Court.

The plaintiff is the assignee of the following written contract: "December 29, 1905. I hereby agree to sell Mr. A. J. Ellis, a No. 5 Press, with dies not duplicate in front of machine, for the sum of six hundred and eighty dollars. Signed, George A. Ohl, Jr., for George A. Ohl & Company." The contract was assigned to the plaintiff on January 4th, 1906. It is not questioned that Mr. Ohl was authorized to act

for the defendant. The press and dies had belonged to A. J. Ellis Company, an insolvent corporation, and together with other machines had been bid in at the receiver's sale by Ellis for Ohl. The contract in suit was in pursuance of an oral agreement made on the same day prior to the sale. On January 8th, 1906, Ohl sold the press and dies to the Leonard Sheet Metal Works. The press was taken from the Ellis company factory on January 9th, and delivered on January 10th, at the Leonard works. On January 11th, an attorney on behalf of Ellis demanded the return of the press with all the dies and attachments to the Ellis company's plant, and offered to pay the purchase price at the time of the delivery. There was testimony on the part of the defendant that efforts were made on its behalf to see Ellis and get the purchase price from him, but that he was not seen for ten days after the sale. The substantial defence is his failure to pay. The judge charged the jury that when goods are sold the seller is bound either to deliver the goods or to put them in such position that the buyer can get them before he has any right to ask for payment of the money; that where goods are a large bulky machine the seller cannot be expected to take it to the buyer's premises, unless there is some agreement that he should do so, but if he puts it in a position where the buyer wants it put or where the buyer can get it so as to be satisfactory to him and for the transaction of his business, the seller has done what he is obliged to do, and would then be entitled to payment, but until he does some act from which the law would say that he had delivered the goods or put them in the possession of the buyer he is not to demand his money. He also charged that if the defendant did not wait a reasonable time, the plaintiff had his action; but that if the defendant waited a reasonable time, the plaintiff could not maintain his action, for he failed himself to do what the law says he should do—that is, either to pay the money or to make a tender to pay, unless he knew that the seller could not comply with his obligation and carry out his contract; that if the plaintiff knew that the seller could not carry out his contract, he, the plaintiff, was relieved from the obligation to pay or tender to pay the price. As to the measure of dam-

ages he charged that the purchaser could recover the difference between the market value of the goods agreed to be sold and the amount he was to pay for them; that if the goods were of such a nature that there was no fixed market value the buyer had a right to do the best he could—that is, to purchase a machine similar to the one which he was to get, or as near as he could, not paying an extravagant price for it; that he was bound to do the best he could and get the cheapest machine that would answer the description of the machine that he bought. He stated to the jury the evidence on behalf of the plaintiff that he had been obliged to pay $1,750, and also that on behalf of the defendant that the press and dies were worth only $1,250.

For the plaintiff in error, *Coult & Smith* (*Joseph Coult, Jr.,* on the brief).

For the defendant in error, *Warren Dixon.*

The opinion of the court was delivered by

SWAYZE, J. The exceptions that are intended to raise the principal questions in this case are defective, in that they assume to except to portions of the charge, one of them a page in length, embracing different propositions of law, and fail to point out distinctly the particular point to which exception is taken. We have, nevertheless, considered the merits of the questions argued in the brief of the plaintiff in error, but are not to be understood as approving the form in which the exceptions were taken.

Although the contract involved in this case was made before the passage of the Sales act of 1907, it is convenient to take the statement of the law from that act, which was, as far at least as this case is concerned, only a codification of the already-existing law. The rule, as to delivery, is thus stated in section 43 (*Pamph. L.* 1907, *p.* 326) : "Whether it is for the buyer to take possession of the goods or for the seller to send them to the buyer is a question depending in each case on the contract, express or implied, between the parties. Apart

from any such contract, express or implied, or usage of trade to the contrary, the place of delivery is the seller's place of business, if he have one, and if not his residence; but in case of a contract to sell or a sale of specific goods, which to the knowledge of the parties when the contract or the sale was made were in some other place, then that place is the place of delivery." In the present case, there was no special agreement as to the place of delivery. The contract was for the sale of specific goods which were to the knowledge of the parties in the A. J. Ellis Company factory; that place then was the place of delivery. Since the goods were left by the vendor at the place of delivery, it was open to both parties to claim an actual delivery by which the title passed to the vendee. Whether a delivery was thereby effected was a question depending on their intent, and both parties have treated the case as if there was no delivery. They have themselves treated the contract as an executory contract of sale—the vendor on his part by assuming to remove the goods and selling them as his own, and the vendee by bringing this suit for damages for breach of the contract instead of a suit in trover or replevin for the goods. Under an executory contract of sale, delivery of the goods and payment of the price are concurrent conditions, unless otherwise agreed, and the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price, and the buyer must be ready and willing to pay the price in exchange for the possession of the goods. *Sales Act,* § 42. Before either party can put the other in default he must tender performance on his part. The defendant failed to tender delivery, and although he might have left the goods in the factory and treated that as a delivery upon which the purchase price would become due, he took a position inconsistent with that, and thereafter failed to put Ellis in default; for although he made an unsuccessful effort to demand the purchase price, the evidence fails to show an offer to deliver the press. Ellis, on his part, tried to put the defendant in default by the letter of his attorney on January 11th, but this letter was written after the defendant had sold the goods to the Leonard Sheet Metal Works, and a tender

of the purchase price at that time was unnecessary, since it was nugatory. The defendant had incapacitated himself from performance on his part. *Parker* v. *Petit,* 14 *Vroom* 512, approved by this court in *Kerr* v. *Henderson,* 33 *Id.* 724 (at *p.* 728). It is urged on behalf of the plaintiff in error that a tender of the purchase price by Ellis after January 4th, when he assigned his contract to Gruen, is unavailing, because not made by the party interested as vendee; but since a tender was not necessary, this question is unimportant. The contract was assignable, as it was a mere contract for the sale of a specific article and no personal element was involved. The assignee, the present plaintiff, before he could maintain an action was obliged to prove a breach by the defendant, and since no time for delivery was fixed, the defendant was entitled, as the judge charged, to a reasonable time within which to make delivery. Such is expressly declared to be the rule by the statute where the contract requires the seller to send the goods to the buyer. Section 43 (2). This rule is applicable in a case like the present, where, although the goods are specific goods and are in a certain place to the knowledge of the parties at the time of the contract, under section 43 (1) they are subsequently removed by the seller. Such, too, was the law prior to the passage of the act. *Willis. Sales,* § 451. The defendant, however, without trying to make a delivery, sold the goods to a third person. It was therefore unnecessary for Gruen to tender the purchase price, since that would have been as the judge told the jury an idle ceremony. The law has been so certainly since the decision in *Bowdell* v. *Parsons,* 10 *East* 359, and the general principle is much older, *Sir Anthony Main's Case,* 5 *Rep.* \*21. We adopted it in Parker *v.* Petit cited above. The trial judge might well have rested the plaintiff's right to recover upon the defendant's incapacitating himself from performance. It was therefore favorable to the defendant to charge as he did that the plaintiff could not maintain his action if the defendant waited a reasonable time before making the sale to the Leonard works, for that in effect put the plaintiff in default and released the defendant from his liability, although the defendant never

tendered delivery. And the charge was unduly favorable to the defendant also in limiting the excuse for the plaintiff's failure to tender the purchase price to the case where he knew that the defendant had incapacitated himself to perform the concurrent condition; it is the defendant's incapacity to perform, not the plaintiff's knowledge thereof, that excuses performance on the part of the plaintiff.

The judge's charge on the measure of damages was in accordance with the rule stated in section 67 of the Sales act, as follows: "Where there is an available market for the goods in question, the measure of damages in the absence of special circumstances showing proximate damages of a greater amount is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or if no time was fixed, then at the time of the refusal to deliver." The judge added, that if the goods were of such a nature that there is no fixed market value, the buyer has a right to do the best he can—that is, purchase a machine similar to the one that he was to get, or as near as he can, without paying an extravagant price; that he is bound to get the cheapest machine that he can that will answer the description of the one he bought. In stating to the jury the testimony of the plaintiff as to the cost of the new machine, and the testimony of the defendant as to the actual value of the specific machine sold, he was putting before the jury the two extremes without stating any legal proposition. If the defendant desired the attention of the jury called to the fact that the plaintiff had bought a new instead of a second-hand machine, he should have requested a charge that the jury make proper allowance for the difference of value between new and second hand. This he failed to do, and it may well have been that no cheaper substitute was in fact procurable. The rule, as charged, was in substantial accord with that stated by the Supreme Court in *Rhind* v. *Freedley*, 45 *Vroom* 138, following *Hinde* v. *Liddell* (1875), *L. R.*, 10 *Q. B.* 265; *Benj. Sales* (*5th Eng. ed.*) 987, and is approved in *Willis. Sales*, § 599.

We find no error requiring a reversal of the judgment, and it is therefore affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Congdon, Sullivan, JJ. 13.

*For reversal*—None.