8 N.J. Super. 118 (1950)
73 A.2d 607
MILLER AND SONS BAKERY CO., INC., AND ANOTHER, PLAINTIFFS-RESPONDENTS,
v.
MAX SELIKOWITZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1950.
Decided May 22, 1950.
*119 Before Judges JACOBS, DONGES and BIGELOW.
Mr. Lewis S. Jacobson argued the cause for the respondents (Mr. Sam Weiss, on the brief).
Mr. Harold J. Sklarew argued the cause for the appellant.
The opinion of the court was delivered by BIGELOW, J.A.D.
The respondent, Miller and Sons Bakery Co., agreed to buy the business conducted by the appellant Selikowitz, and paid $2,000 on account of the purchase price when the contract was signed November 17, 1948. One of the stipulations of the contract read:
"The seller agrees to procure an employment agreement with James Koye, with the restrictive covenant (2 yrs.) not to engage in a similar business or to take the customers of the seller, at a salary *120 of $63.00 per week, for a period of one year. If the seller cannot obtain such an agreement, the purchaser may, at his option, declare this contract void, and be entitled to a return of his deposit in full, without damages to either party."
The buyer later assumed to exercise his option to avoid the contract, and the question in the suit is whether the circumstances gave him the right to make that election. On November 26th, the seller's lawyer, Harold J. Sklarew, wrote to Lewis S. Jacobson, attorney for the buyer, as follows:
"I am enclosing, herewith, copy of contract which I negotiated between Selikowitz, and his driver, James Koye. It was necessary for me, upon Koye's request, to make the contract for two years in order to get a two year restrictive covenant. He also insisted on the clauses in the addendum, because of the fact that he presently has this arrangement with Selikowitz. Please let me know whether the same meets with your approval, so we can at least dispose of this question at the closing."
Benjamin Miller testified that on November 28th or 29th, he had a talk with Selikowitz:
"I told him I can't take the business with such an agreement (meaning the agreement with Koye). He says, `That is the best agreement I can get. Otherwise the deal is off.'
"To the question, `Did you say anything to him?' he replied, `Off is off; what can I do? That is all.'
"`You said it is off?' he was asked, and repeated, `Off.'"
On cross-examination, Benjamin restated what he had said to Selikowitz: "The deal is off. You can't get a contract and the deal is off." Samuel Miller corroborated his brother Benjamin, but Selikowitz denied that the conversation took place. Benjamin Miller testified that on November 27th or 28th, he had a similar conversation with Sklarew. This also is denied.
On December 1st, Jacobson wrote Selikowitz "to effectively cancel" the agreement to buy the business. "This action on the part of my client is effected by virtue of your inability to comply with paragraph 19,"  the paragraph quoted above. The letter avers that the contract with Koye which had been *121 signed "varies materially and substantially from the one contemplated in the agreement and undertaken by you with my client. I must therefore insist upon the return of the deposit forthwith so that the declaration of the contract as being void under the option given to my client is given full force and effect and the option on the part of my client (the purchaser) is that he declares this contract void by virtue of the failure on your part to perform the conditions precedent."
Sklarew, to whom Jacobson had sent a copy of the foregoing letter, immediately replied under date of December 2nd:
"I certainly feel that the contract prepared with James Koye is one which would be mutually beneficial to Koye and Miller, in the long run. However, since your client desires to be technical, I suggest that you prepare the contract in accordance with Mr. Miller's requirements, and I will have the parties sign the same, or if you will instruct me what changes you wish to be made, I will redraft the same. I will await your further instructions."
Jacobson rejoined, by letter dated December 3rd, that his client
"takes the position that he wishes to avail himself of the option, which he has done, to give no effect to the contract by virtue of the variance in the employment agreement which had already been executed."
Now, the agreement of sale signed November 17th, did not call for passage of title until January 3, 1949, at which time the bill of sale "and all other agreements and instruments are to be delivered." On December 6th, Sklarew again wrote Jacobson:
"There is no duty upon my client to supply you with an employment agreement until the date of closing. At that time I will provide such an agreement duly executed exactly in accordance with the terms of the contract. Under the circumstances, your client doesn't have the right to exercise his option to cancel the agreement, and we will hold him strictly accountable to the same."
Each side stood firm and on December 17th, two weeks before the time set for fulfillment of the executory clauses of *122 the contract, the respondent brought suit for return of the sum of $2,000 which had been paid on account. A summary judgment for plaintiff was reversed on appeal. 4 N.J. Super. 97 (App. Div. 1949). The action then came on for trial which resulted in a verdict for plaintiff in the sum of $2,000. Defendant appeals from the judgment and argues that the evidence did not support the verdict.
One of the means by which a contract may be discharged is a new agreement between the parties. Perrine v. Cheeseman, 11 N.J.L. 174 (Sup. Ct. 1829). The conversation between Benjamin Miller and Selikowitz on November 28th or 29th might be construed as a new agreement abrogating the sale. But that is not the allegation of the complaint; and, as we reach the same result by another course, we do not have to consider whether there was a rescission of the contract of sale by mutual consent.
The subject of anticipatory breach of contract has been discussed at length by counsel, as an aid in determining the operation of the option clause in the contract and also because the rules relating to anticipatory breach may have some direct relevancy to the issue here. Upon a vital breach of contract by one party, the opposite party may sue for damages resulting from the breach, or he may treat the contract as terminated, and maintain assumpsit for a return of the consideration paid on account. Ordinarily no action for damages or for restitution can be maintained until the time for performance has come and there has been an actual failure to perform. But when one party announces clearly and unequivocably that he will not or cannot fulfill the contract, the opposite party may bring suit without awaiting the day set for performance. O'Neill v. Supreme Council, 70 N.J.L. 410 (Sup. Ct. 1904); Holt v. United Security, etc., Co., 74 N.J.L. 795 (E. & A. 1907). Or if a party puts it out of his power to fulfill his contract, the result is the same, that is, the other party may sue forthwith. Wolff v. Meyer, 75 N.J.L. 181; affirmed, 76 Id. 574 (1908); Gruen v. Ohl & Co., 81 N.J.L. 626 (E. & A. 1911); Rest. Contr., § 318.
*123 The plaintiff argues that when the seller, Selikowitz, signed a contract with Koye, for two years' employment, he disabled himself from fulfilling the terms of his bargain with plaintiff which called for a one-year contract with Koye. But any contract with Koye depended, of course, on Koye's consent. It was as possible after he had signed the two years' contract as before that he might agree to one year. Selikowitz did not put it out of his power to fulfill his agreement with Miller.
The letter written by Sklarew, the attorney for the seller, to the buyer's lawyer on November 26th, enclosing a copy of the Koye contract, was held on the first appeal in this action insufficient by itself to entitle the buyer to rescind. 4 N.J. Super. 97 (App. Div. 1949). But the conversation between Benjamin Miller and Selikowitz,  if the jury accepted the former's testimony as true,  may be considered a positive statement that Selikowitz would be unable to obtain the requisite one-year contract with Koye. If such a view of the proofs be accepted, judgment for the plaintiff seems unexceptionable.
There is another rule relating to anticipatory breaches that has not been brought into the case by the pleadings, or request to charge, or otherwise, and which has not been argued before us but which we will mention in order not to seem to discard it by silence. An anticipatory breach is nullified as the basis of an action for damages, if the repudiation of the contract is withdrawn before the injured party brings his action or otherwise materially changes his position. Rest. Contr., § 319. See Traver v. Halsted, 23 Wend. 66 (N.Y. 1840). Whether it is nullified as the basis of rescission if the repudiation is not withdrawn until after the opposite party has manifested his election to rescind, is doubtful. Will Contr., § 1335; 17 C.J.S., Contr., § 472(5); Perkins v. Frazer, 31 So. 773 (La. 1901).
As already suggested, the action turns on whether the buyer, Miller and Sons Bakery Co., was in such a position that the option provision of the contract gave the buyer the right on December 1st to "declare this contract void." The *124 principles that apply to breach of contract and rescission which we have been discussing, aid us in reaching our decision that Selikowitz' statement that the two-year agreement with Koye "is the best agreement I can get. Otherwise the deal is off," created a situation where the buyer had a right to elect that the contract should be void. There was sufficient evidence to sustain the verdict. No objection was made to any part of the charge, and no criticism of the charge will be considered by us. Rule 3:51.
The judgment is affirmed.