# CASES AT LAW

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

JUNE TERM, 1908.

---

HIRAM WOMBLE HOLT, WHO SUES TO THE USE OF
FREDERIC A. CHAPMAN, DEFENDANT IN ERROR, v.
UNITED SECURITY LIFE INSURANCE AND TRUST
COMPANY, PLAINTIFF IN ERROR.

Submitted July 6, 1908—Decided March 1, 1909.

1. Where a contract is made between two parties for the benefit of a
   third, the beneficiary may either sue in his own name, or bring an
   action in the name of the nominal party for his use.
2. Under our Practice act (*Pamph. L.* 1903, *p.* 572, § 126), amend-
   ments in matters of form that have not affected the fair trial and
   determination of the real question in controversy, may be allowed
   in the court of review.
3. Repudiation of an agreement by one party, in advance of the time
   for performance, dispenses with the further performance of condi-
   tions precedent by the other party.
4. Where before the time for performance it appears that one party
   will not be able to perform his agreement upon the precise date
   stipulated, the other party may not repudiate his obligation in
   advance unless time is of the essence of the agreement.
5. The proper function of an exception is to direct the mind of the
   trial judge to a single and precise point in which it is alleged
   that he has erred in law. If an exception does not do this it
   furnishes no ground for reversal on error.

585

6. An exception which challenges an instruction to the jury that combines several different propositions of law is of no avail unless it show the precise ground of objection; in which event the review is confined to the specific ground alleged.

7. Where one party to an agreement repudiates his obligation *in toto* in advance of the time for performance, the injured party, instead of rescinding the contract so as to put it at an end as if it had never been made, may treat it as ended merely for purposes of further performance, and hold the wrong-doer liable for the damages sustained by reason of the repudiation:

8. Losses directly incurred, as well as gains prevented, may furnish a legitimate basis for compensation to the party injured by repudiation of an agreement.

9. Where the profits prevented by repudiation of an agreeement cannot be recovered by reason of the want of definite proof, expenditures fairly incurred by the injured party in preparation for performance, or in part performance of the agreement, form a proper subject for consideration, where the party injured, while relying upon his contract, makes the expenditures in anticipation of the advantages that will come to him from completed performance.

On error to the Supreme Court.

For the plaintiff in error, *Lewis Starr* and *Thompson & Cole*.

For the defendant in error, *Eli H. Chandler* and *George A. Bourgeois*.

The opinion of the court was delivered by

PITNEY, CHANCELLOR.     The first trial of this action resulted in a judgment of nonsuit, which, upon error, was reversed by this court.     *Holt* v. *United Security Life Insurance Co., 45 Vroom* 795.     The new trial thereupon granted resulted in a verdict in favor of the plaintiff for substantial damages, upon which judgment has been entered, and that judgment is now under review for alleged trial errors.

The following is the case presented by the record and bill of exceptions: In the fall of the year 1899 Chapman was in possession of a lot of land in Atlantic City, with a frame boarding-house thereon, under a written agreement of purchase made between him and one Price, the owner.     Chapman

desired to complete his purchase, remove the old structure, and erect in its place a brick apartment-house. In order to enable him to do this he applied to the defendant for an advance of money. The new structure was to cost about $35,000. The defendant company, as its corporate name indicates, advances money upon the combined security of policies of life insurance and mortgages upon land. The company, with full knowledge of Chapman's plans, at first accepted his application for an advance to the extent of $30,000. Afterwards the proposed advance was increased to $32,500, but the company refused to place so large a risk upon a single life. For this reason, and because of some difficulty or apprehended difficulty between Chapman and his wife, it was arranged between him and the company that Chapman, upon completing his purchase from Price, should procure the legal title to be placed in the name of Holt, in trust for Chapman; that the application for the loan should be in Holt's name, but for Chapman's benefit; that the advance should be secured by separate bonds and warrants of attorney, each executed by both Holt and Chapman, by separate life insurance agreements and policies upon the lives of Holt and of Chapman, respectively, and by separate mortgages made by Holt to the defendant company. Upon these terms the company, on or about December 1st, 1899, agreed to advance the money upon completion of the building. Unless default were made in the payments of the premiums upon the insurance policies (which were twenty-year endowment contracts) payment of the principal sums was not to be exacted until the death of Holt or of Chapman, respectively, or until the expiration of the twenty years; that is to say, not until the maturity of the policies. All of the necessary papers were executed, including the mortgages upon the land, and these latter were placed upon record on January 19th, Chapman having in the meantime procured his vendor, Price, to make a deed for the property to Holt as his nominee. Holt was the confidential bookkeeper of Chapman, and in the entire transaction was a mere figurehead for the latter.

In reliance upon the agreement thus made by the defendant

company, Chapman sold the frame building as it stood upon the land, with privilege of removal, and it was promptly removed. He also proceeded to make contracts with various parties for the furnishing of materials and doing the construction work of the new building. The work was in progress, and had reached a somewhat advanced stage, when the defendant, on April 18th, 1900, wrote to Mr. Chandler, who was acting as attorney and agent for Chapman in the matter, that it did not desire to make the proposed loan. After some time spent in vain protests, Chapman concluded to treat the refusal as final, and later brought this action to recover damages for the repudiation of the agreement.

The case discloses that Chapman had obtained credit from his materialmen and contractors upon the strength of the defendant's agreement to advance the $32,500 upon completion of the building. When that agreement was repudiated mechanics' lien suits were brought and judgments obtained therein, including liens upon the building, and in order to prevent a sacrifice of the property by execution sale, he, in January, 1901, effected a private sale of the property to Messrs. Sheppard & Hackney, upon terms that reimbursed him for a considerable part of the expenditures that had been made and liabilities that had been incurred in and about the erection of the new building, not, however, including the value of the frame building removed, the rental value of the property while the construction of the new building was under way, nor certain disbursements to be referred to below.

The numerous assignments of error refer principally to the refusal by the trial judge of motions made for a nonsuit and for the direction of a verdict in favor of the defendant; to the refusal of the defendant's sixth request to charge, which related to an asserted justification of defendant's rescission of the agreement, and to the instructions given respecting the measure of damages.

The motions for nonsuit and for direction of a verdict were rested upon two points only.

*First.* That the action was improperly brought in the name of Holt to the use of Chapman. The argument is based upon

the ground that the injury, if any, flowed to Chapman alone. This fact, which is sufficiently obvious, is a good reason for bringing the action for the use of Chapman, but is no reason for not bringing it in the name of Holt. Whether it should be brought in the name of Holt is a purely technical question, and depends upon whether the contract was in form made with Holt. We think there was at least evidence that it was so made in form. It is insisted that defendant's agreement is contained in its letter to Mr. Chandler dated November 22d, 1899, approving Chapman's application for a loan of $30,000. But, as already mentioned, this arrangement was afterwards changed and the loan increased to $32,500, with security upon land the title to which was to be put in Holt; and in a letter of December 6th the company wrote to Chandler that, "As we have no connection with Chapman in this loan, we think his name should not appear in any of the papers relating to it." From this and from certain other evidence in the case it was a reasonable inference that while both parties were consciously contracting in a matter of which the benefit on the one side was to flow to Chapman alone, they were at the same time consciously, and for reasons satisfactory to themselves, contracting in the name of Holt. Under strict common-law rules of practice and pleading it would be necessary in such a situation to bring the action in the name of Holt as the party with whom the contract was made, and it would be proper for him at the same time to declare a trust in favor of Chapman for the proceeds of the suit. Such a trust is properly declared by reciting in the proceedings that Holt sues for the use of Chapman. Such was the familiar mode of pleading in actions upon an assigned chose in action. *Sullivan* v. *Visconti, 39 Vroom* 543, 548; *affirmed,* 40 *Id.* 452. As pointed out in that case, it required a statute to enable the assignee of a chose in action to sue in his own name.

The present is not an action by assignee, but is a suit by the nominal promisee in behalf of the party for whose benefit the promise was made, and from whom the consideration moved. In such cases, when arising upon simple contracts,

our courts have long recognized the right of the beneficiary to sue, even when the consideration did not move from him; otherwise in actions upon sealed contracts. *Joslin* v. *N. J. Car Spring Co.,* 7 *Vroom* 141; *Cocks* v. *Varney,* 18 *Stew. Eq.* 72; *Crowell* v. *Hospital of St. Barnabas,* 12 *C. E. Gr.* 650; *Katzenbach* v. *Holt,* 16 *Stew. Eq.* 536, 550; *Jordan* v. *Laverty,* 24 *Vroom* 15; *Styles* v. *Long Co.,* 38 *Id.* 413, 418. The same rule was applied to contracts under seal by *Pamph. L.* 1898, *p.* 481, and *Pamph. L.* 1902, *p.* 709. And see Practice act (*Pamph. L.* 1903, *p.* 541, § 28). Therefore the present action might have been brought in the name of Chapman, without the use of Holt's name. But the statute is permissive, not exclusive, and we see no reason to hold that the common-law method may not still be pursued.

Moreover, the objection, if it were valid, relates to the merest matter of form, not at all affecting the fair trial and determination of the real question in controversy; and therefore if it had been deemed tenable it ought simply to have led to an amendment in the trial court, or, failing that, in this court, under the very liberal policy prescribed by our Practice act respecting amendments. *Pamph. L.* 1903, *p.* 572, § 126. *American Life Insurance Co.* v. *Day,* 10 *Vroom* 89, 91; *Farrier* v. *Schroeder,* 11 *Id.* 601; *Blackford* v. *Plainfield Gaslight Co.,* 14 *Id.* 438, 442; *Ware* v. *Millville Fire Insurance Co.,* 16 *Id.* 177, 179; *Finegan* v. *Moore,* 17 *Id.* 602, 604; *Jones* v. *Cook,* 25 *Id.* 513, 517; *Monmouth Park Association* v. *Warren,* 26 *Id.* 598, 601; *Vunk* v. *Raritan River Railroad Co.,* 27 *Id.* 395, 399; *Excelsior Electric Co.* v. *Sweet,* 28 *Id.* 224, 226.

The second and only remaining ground upon which the motions were rested was that by the contract the plaintiff's right to have the advance of money from the defendant was conditioned upon producing a search showing a marketable title, and that he failed to prove its production. Concerning this it is sufficient to say that the repudiation by the defendant of its obligation to loan the money, in advance of the time for performance, dispensed with the further performance of conditions precedent by the plaintiff. *O'Neill* v. *Supreme*

*Council,* 41 *Vroom* 410; *Holt* v. *United Security Life Insurance Co.,* 45 *Id.* 795.

The next ground urged for reversal is that the trial judge ought to have charged the defendant's sixth request, which was to the effect that if the jury should find that by the terms of the contract the defendant was to loan the money upon completion of the building on or before September 1st, 1900, and that (regardless of defendant's repudiation) the plaintiff could not have completed it by that time, and that the president of the defendant company so thought when he rescinded, and that such rescission was justified, the verdict must be in favor of the defendant. Our attention has not been called to any evidence tending to show that when defendant repudiated the contract Chapman was, or probably would be, unable to complete the building by September 1st, nor to anything in this record showing that completion of the building by September 1st was one of the terms of the agreement.

But supposing there was evidence favorable to the defendant upon both of these points, Chapman's demonstrated inability to complete the building by the very day specified would not justify the other party in rescinding the agreement in advance unless completion on or before a certain date was in express terms made essential to the agreement, or else was so vital a matter that a failure of performance by Chapman in this regard would render performance of the agreement by the company a thing different in substance from what it had stipulated for, and not a matter to be compensated in damages. It is obvious, however, that a short delay in the completion of the building beyond September 1st could readily be compensated in the adjustment of interest or otherwise; and so the time of completion was not of the essence of the agreement unless made so by the parties themselves.

Where time is of the essence of the agreement, a breach in this regard will bar a recovery by the one in default, and will entitle the other to abandon the contract. But where performance upon a precise date is not vital and may be compensated in damages, mere delay, in the absence of fraud or the like, will not justify the other party in abandoning the

contract. And, for the same reason, where it is made plain in advance that one party will not be able to perform upon the precise date stipulated (time not being made essential) the other party may not repudiate his obligation in advance. *Pordage* v. *Cole,* 1 *Wms. Saund.* 319, *note; Seeger* v. *Duthie* (1860), 8 *C. B.* (*N. S.*) (98 *E. C. L. R.*) 45; 29 *L. J., C. P.* 253; *S. C. on appeal,* 8 *C. B.* (*N. S.*) 72; 30 *L. J., C. P..*65; *MacAndrew* v. *Chapple* (1866), *L. R.,* 1 *C. P.* 643; *Bettini* v. *Gye* (1876), *L. R.,* 1 *Q. B. Div.* 183. The last two cases were cited with approval by our Supreme Court in *Luce* v. *New Orange Industrial Association,* 39 *Vroom* 31, 34. And in discussing a kindred question in *Blackburn* v. *Reilly,* 18 *Id.* 290, 309, Mr. Justice Dixon, speaking for this court, referred with approval to the "ancient doctrine laid down by Sergeant Williams in his notes to Pordage *v.* Cole, that where a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an *independent* covenant, and an action may be maintained for a breach of the contract on the part of the defendant without averring performance in the declaration. It of course is inapplicable where the parties have expressed their intention to make performance of a stipulation touching a part of the bargain a condition precedent to the continuing obligation of the contract; and peculiar cases might arise where the courts would infer such an intention from the nature and circumstances of the bargain itself, cases in which the courts would say that the partial stipulation was so important, so went to the root of the matter, as to make its performance a condition of the obligation to proceed in the contract." See, also, 7 *Am. & Eng. Encycl. L.* (*2d ed.*) 153.

The legal fault in the sixth request consisted in this, that it required the jury to treat inability on the part of Chapman to complete the building by September 1st as a sufficient ground for rescission or abandonment by the other party, even though the jury did not find that completion on or before that date was by the parties made an essential term of the agreement. For this reason, if for no other, the refusal of the sixth request was justified.

The remaining grounds relied upon for reversal relate to the measure of damages. Upon this topic the trial judge charged: "If you find he is entitled to recover you should allow him such sum as you think, from the testimony, he has lost because of the breach of this contract on the part of the defendant company, including the money he spent on the foundation of that building for which he was not reimbursed—I think it appeared that he was reimbursed partially—the money spent on architect's fees, money spent on freight, money spent in searches, and what he lost on the removal of the building, and what he lost by way of rental because of the removal of the building." To this instruction (which obviously involves several distinct legal propositions) the defendant took two exceptions, one upon the ground that it was "not such a specific and intelligible definition of the measure of damages as aids the jury in arriving at a proper solution," and the other "for the reason that these are not such elements as the jury have a right to consider."

Considering these exceptions as merely negativing the correctness of the instructions given, they are both multifarious, in that they challenge an instruction that contains several different legal propositions.

For the proper administration of justice in our common-law courts it is important to enforce the established principle that the proper function of an exception is to direct the mind of the trial judge to a single and precise point in which it is alleged that he has erred in law, so that mistrials due to inadvertence and errors may be obviated. If an exception does not do this it furnishes no ground for reversal on error. An exception which challenges an instruction to the jury that combines several different propositions of law is of no avail unless it show the precise ground of objection; in which event the review is confined to the specific ground alleged. *Packard* v. *Bergen Neck Railroad Co., 25 Vroom* 553, 558; *Addis* v. *Rushmore,* 45 *Id.* 649, 651, and cases cited.

The instruction above quoted is indubitably correct, at least with respect to the right of the plaintiff to recover so much as he lost because of the breach of the contract by the

defendant company; and we need inquire no further to sustain it as against a general exception.

The grounds alleged for the exceptions add nothing to their effective force. The instruction was specific and intelligible enough; and the assertion that it did not define the proper measure of damages amounts to nothing in the absence of any effort on the part of defendant's counsel to state what was the proper measure of damages. The objection "that these are not such elements of damage as the jury have a right to consider," is merely negative, and amounts to no more than a general exception to the instruction given.

The defendant, however, submitted five specific requests upon the question of damages, and to the refusal of these exception was duly taken. They required that the jury should disregard:

1. The value of the frame building removed.

2. The rental value of the premises while the construction of the new building was under way.

3. The amount of freight paid on materials for the new building.

4. The amount paid for stone for the foundations of the new building.

5. The amount spent for iron work on foundations.

We stop to say that the question presented by the first of these requests is not whether the entire value of the frame building ought to have been allowed in the damages. The trial judge charged, merely, that the jury should allow *what the plaintiff lost on the removal of the building*. This might or might not be equivalent to the value of the building *in situ*. That value was given in evidence as bearing some relation to what the plaintiff lost by its removal. The instruction requested by the defendant upon this point was that the jury should *wholly disregard* the value of the frame building removed. Compliance with this would have excluded recovery for what the plaintiff lost by its removal.

The theory upon which plaintiff may recover such losses as are referred to in the five requests is that the losses arose from acts done and expenditures made by Chapman in reliance

upon and in furtherance of the agreement, before repudiation by the defendant, and that the loss was the direct consequence of the repudiation.

That the parties contemplated, when the agreement was made, that Chapman was to remove the old building and proceed to construct a new building in its place, incurring expenditures for that purpose, and in the meanwhile losing the rental value of the property, and that these outlays were incurred on the faith and strength of the defendant's agreement, if disputed at all at the trial, is, in view of the verdict, now indisputable. And there was evidence from which the jury had a right to find that as a direct consequence of defendant's repudiation, coupled with the fact that defendant at the same time retained the mortgages upon the property and left them uncanceled of record, so that Chapman could not secure funds elsewhere, he was obliged to abandon the building operation, and sustained a loss of what he had expended on the strength of it, except so much as was recovered through the sale to Sheppard and Hackney.

The present action is not brought for a mere breach of the agreement. In strictness there can be no breach until the time for performance arrives. The action is for a repudiation *in toto,* in advance of the time for performance, and is sustained upon grounds outlined in *Hochster* v. *De La Tour,* 2 *El. & B.* 678; 22 *L. J., Q. B.* 455; 17 *Jur.* 972; 6 *Eng. Rul. Cas.* 576; the doctrine of which case was approved by our Supreme Court in *O'Neill* v. *Supreme Council,* 41 *Vroom* 410; and adopted by this court in the former decision of this case. *Holt* v. *United Security Life Insurance Co.,* 45 *Id.* 795.

As pointed out in the O'Neill case, when such repudiation occurs the injured party may, if he desires, rescind the contract *in toto,* that is, put it at an end as if it had never been made. But instead of doing this, he may treat the contract as ended merely for purposes of further performance, and hold the wrong-doer liable for the damages sustained by reason of the repudiation. Such is the aspect of the present case.

The fundamental and cardinal principle that underlies all

rules for the admeasurement of damages is that the injured party shall have compensation for that which he has directly lost by reason of the act of the other party, so far as such loss was or ought to have been in the contemplation of the parties. This includes the loss of anticipated profits where these are capable of legal ascertainment. But where the profits are not capable of ascertainment, or are remote and speculative, and therefore not proper to be adopted as a legal measure of damage, it does not follow that the injured party is remediless.

In the present case the plaintiff appears to have made no effort to prove the value of the contract nor the profits that he lost by reason of its repudiation. The reason is obvious. The contract was a very special one, not to say unusual. By its terms Chapman was not only to have from the defendant the $32,500 to reimburse him for the cost of his new building, but was to be under no obligation to repay it saving from the proceeds of the endowment policies upon the lives of himself and Holt, which might mature shortly, and, at the latest, at the end of twenty years, Chapman in the meantime paying the stipulated premiums. No rule is suggested, nor are we aware of any, by which the value of such a contract may be estimated or the profits to arise from it be ascertained. And so, whether Chapman's property, when completed as proposed, would have been worth more or less than it would have cost him through performance of such an agreement, was of course unascertained, and probably unascertainable.

But the suggestion that he ought to have been limited to nominal damages because he might have elsewhere procured the money wherewith to complete the building, and presumably at no greater cost than under the agreement with the defendant, is, we think, entirely inadmissible; among other reasons because there was nothing in the evidence to show, nor can we without evidence presume, the existence of a market in which money may be procured upon like terms at any rate of interest or premiums; and besides, the existence of the mortgages in the hands of the defendant and undischarged upon record, presumptively constituted a practical

obstacle in the way of Chapman procuring the money else-where on any terms.

Losses directly incurred, as well as gains prevented, may furnish a legitimate basis for compensation to the injured party. And among such immediate losses, expenditures fairly incurred in preparation for performance or in part perform-ance of the agreement, where such expenditures are not other-wise reimbursed, form a proper subject for consideration where the party injured, while relying upon his contract, makes such expenditures in anticipation of the advantage that will come to him from completed performance. Where the profits that have been lost are shown with such certainty as to entitle the plaintiff to damages under this head, we do not mean to say that he may have recovery for his preliminary outlay in addi-tion, for this would seem to involve a double recovery. But where one party repudiates, and thus prevents the other from gaining the contemplated profit, it is not, we think, to be presumed in favor of the wrong-doer (in the absence of evi-dence) that complete performance of the agreement would not have resulted in at least reimbursing the injured party for his outlay fairly made in part performance of it. Ordi-narily, the performance of agreements results in advantage to both parties over and above that with which they part in the course of its performance, otherwise there would soon be an end of contracting. And it seems to us, upon general princi-ples of justice, that if he who, by repudiation, has prevented performance, asserts that the other party would not even have regained his outlay, the wrong-doer ought at least to be put upon his proof.

This view of the matter is, we think, abundantly supported by authority.

In *Pond* v. *Harris* (1873), 113 *Mass.* 114, 122, it was held, in an action for the wrongful revocation of an agreement to submit a controversy to arbitration, that the plaintiff might recover for his loss of time and for his trouble and expenses in preparation for the hearing before the arbitrators, includ-ing employment of counsel and taking of depositions and pay-ing witnesses, so far as those preparations and expenditures

were not available for the trial of his cause before the ordinary legal tribunal, to which defendant, by revoking the agreement, had compelled him to resort.

In *United States* v. *Behan* (1883), 110 *U. S.* 338, 344, Mr. Justice Bradley, in delivering the opinion of the court, said: "The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or groups of damage, namely— *first,* what he has already expended towards performance (less the value of materials on hand) ; *secondly,* the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. * * * If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to recover in all cases, unless the other party, who has voluntarily stopped the performance of the contract, can show the contrary. * * * When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he cannot recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a *quantum meruit.* There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. If he choose to go further, and claims for the loss of anticipated profits; he may do so, subject to the rules of law as to the character of profits which may thus be claimed. It does not lie, however, in the mouth of the party who has voluntarily and wrongfully put an end to the contract to say that the party injured has not been damaged at least

to the amount of what he has been induced fairly and in good faith to lay out and expend (including his own services), after making allowance for materials on hand; at least, it does not lie in the mouth of the party in fault to say this unless he can show that the expenses of the party injured have been extravagant, and unnecessary for the purpose of carrying out the contract. * * * The distinction between those claims under a contract which result from a performance of it on the part of the claimant, and those claims under it which result from being prevented by the other party from performing it, has not alway been attended to. The party who voluntarily and wrongfully puts an end to a contract and prevents the other party from performing it, is estopped from denying that the injured party has not been damaged to the extent of his actual loss and outlay fairly incurred."

This was a case of one who had a contract with the government for the construction of harbor improvements, and who had been unjustly prevented from performance. His recovery included outlay only, and not profits. What is said in the opinion respecting the recovery of profits in addition to outlay is *obiter,* and, as already intimated, we are not inclined to approve of it.

In *Bernstein* v. *Meech* (1891), 130 *N. Y.* 354, the defendants agreed to furnish to the plaintiff the use of an opera house for certain performances by a theatrical company, and the plaintiff agreed to furnish the services of the company and to take as consideration fifty per centum of the gross receipts from the performances. After the plaintiff had incurred expense in making preparations for performance of the agreement on his part, the defendants gave him notice that they had arranged for another theatrical company to occupy the opera house on the dates in question, and plaintiff was thus prevented from giving the performances that had been contemplated. Upon the question of damages the New York Court of Appeals said (130 *N. Y.* 359) : "The general rule on the subject would permit him, in case of breach by the defendants, to recover the value of his contract. And that was dependent upon the receipts to be realized from the contemplated

performances by the plaintiff's company. The results which would in that respect have been produced if the company had been permitted to perform the contract were speculative, and by no probative means ascertainable. It is contended on the part of the defendants that recovery could be founded on no other basis, and therefore the plaintiff could recover nominal damages only. * * * The value of the contract to the plaintiff was in the profits, and in the amount of them which may have been realized over his expenditures pending its performance. Those profits, not being susceptible of proof, were not the subject of recovery. But by the breach of the contract by the defendants, the plaintiff was denied the opportunity which the observance of it could have given him to realize fifty per centum of such receipts as would have been produced by it. His loss also consisted of the expense by him incurred to prepare and provide for such performance. While the plaintiff was unable to prove the value in profits of his contract, he was properly permitted to recover the amount of such loss as it appeared he had suffered by the defendant's breach. * * * It cannot be assumed that any part of this loss would have been sustained by the plaintiff if he had been permitted to perform his contract."

In *Worthington & Co.* v. *Gwin* (1898), 119 *Ala.* 51; 43 *L. R. A.* 383, the court said: "The damages for the breach of a contract of this character, when its full performance is prevented by the one party without fault on the part of the other, may consist of one or the other of two items— *first,* the profits that would have been realized by the full performance; and *second,* if there would not have been any profits, or if the proof fails to show what would have been the amount, the reasonable expenditures made and loss of time, less the material on hand. *Danforth* v. *Tennessee and Coosa Railroad Co.,* 93 *Ala.* 620; *United States* v. *Behan,* 110 *U. S.* 344. Both items are not, of course, recoverable, since the profits would necessarily include the expenditures for tools, &c., less their value at the time the work on the contract ceased."

And see *Cederberg* v. *Robison,* 100 *Cal.* 93; *Athletic*

*Association* v. *St. Louis Sportsman's Park,* 67 *Mo. App.* 653; *Sedgw. Dam.* (8th ed.), §§ 139, 607; *Suth. Dam.* (3d ed.), §§ 80, 81, 713 (at *p.* 2183).

Since the disputed matters that were allowed by the trial judge, against specific objection, to be considered by the jury as elements in the ascertainment of damages, were in the nature of outlay, fairly made by Chapman upon the faith and strength of the contract and in furtherance thereof, and since it appeared that repudiation of the contract by the defendant brought a loss upon him with respect to these items beyond what he was able to recover by disposing of the property, we think the trial judge did not err in refusing the several requests that would have excluded these matters from the consideration of the jury.

The above discussion covers all the questions that were raised by the argument submitted for the plaintiff in error in this court. Other questions that might have been raised upon the assignments of error and bills of exceptions we are of course not required to consider. *Lewis* v. *Lewis,* 37 *Vroom* 251; *Roofing Co.* v. *Leather Co.,* 38 *Id.* 566, 571; *Hopwood* v. *Atha & Illingworth Co.,* 39 *Id.* 707, 713. And since it would be manifestly unjust to the defendant in error to reverse the judgment upon any ground not raised in the argument, the remaining assignments of error will be treated as waived.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, REED, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, DILL, J.J.   10.

*For reversal*—GARRISON, SWAYZE, TRENCHARD, VROOM, GRAY, J.J.   5.