In the Matter of the YEAGER COMPANY, Bankrupt.

No. 93158.

United States District Court
N. D. Ohio, E. D.
March 13, 1963.

John M. Ulman, Wise, Roetzel, Maxon, Kelly & Andress, Akron, Ohio, Attorney for Trustee, for trustee.

John M. Glenn and Gillum H. Doolittle, c/o Buckingham, Doolittle & Burroughs, Akron, Ohio, for petitioners Marshall and Mendel.

KALBFLEISCH, District Judge.

This is an appeal from the Referee in Bankruptcy's disallowance of a damage claim.

The Bankrupt, Yeager, was a department store having several branches. The petitioners are members of a partnership which held a contract with the Bankrupt granting the partnership a license to sell goods in a department of the Bankrupt's store. Petitioners were to purchase their own merchandise and make sales for cash or credit. In consideration of the contract and of the use of the Bankrupt's facilities, the petitioners agreed to pay Yeager ten per cent of the gross sales in other stores.

Section 16 of the contract provided in part that:

"In the event of any petition for relief under the Acts of Congress relating to bankruptcy or any assignment for the benefit of creditors filed by or on behalf of or against Yeager, such event shall be and constitute a breach of this license and Marshall and Mendel's obligation hereunder shall terminate and Marshall and Mendel shall have the privilege of removing its property from the demised premises. Marshall and Mendel shall be entitled to any reasonable damages by reason of the breach of Yeager, and Yeager shall be en-

titled to any reasonable damages by reason of breach by Marshall and Mendel."

This same section of the contract also provided that upon the expiration or prior termination of the agreement Yeager would have the right to remove all of Marshall and Mendel's merchandise and equipment from the store.

The petitioners were operating their Department in furtherance of this contract when the bankruptcy occurred on January 20, 1961. The Receiver, who later became the Trustee, continued the store's business until April 8, 1961, and during this time the petitioners continued to operate their department. By the time of the bankruptcy, only about $200 worth of the petitioners' goods remained in the store. However, petitioners contend that they realized a net loss in closing out their merchandise. This loss was the difference between the sale price and the sum of the cost of their goods plus selling expenses. Petitioners filed with the Bankruptcy Court a claim for contract damages in the amount of this loss, which claim was disallowed by the Referee.

The Referee found that the contract contained a provision whereby petitioners guaranteed minimum annual sales of $100,000 for the first year of the contract and $150,000 for each successive year thereafter. He further found that at no time did the petitioners maintain or reach these guaranteed minimum annual sales. The Referee mentioned this breach of the contract in his findings of fact and conclusions of law; however, it is difficult to determine exactly what importance he attributed to this breach. There is no evidence that the Bankrupt treated it as a termination of the contract, and performance was continued by both parties as if the provision had not existed. The Trustee, in his brief, has tacitly admitted that the breach was waived by the Bankrupt because of its continuing pursuance of the contract. This position is clearly correct.

The Referee held that the provision of the contract which provided that bankruptcy on the part of Yeager would be a breach of the license, entitling petitioners to "reasonable damages by reason of the breach," could only entitle them to compensation for the cost of removing their merchandise and equipment from the store. He reached this conclusion on the basis of a determination that upon a breach of the minimum sale requirement the Bankrupt's damages would have been limited to the cost of removing the partnership's fixtures and merchandise. The Referee held that the provision regarding Yeager's bankruptcy therefore had inherent in it a similar limitation upon the petitioners' damages.

This Court is unable to find support for this conclusion. Assuming that the Referee's interpretation of the Bankrupt's rights, had it chosen to terminate the contract for the petitioners' failure to maintain minimum sales, was correct, that provision of the contract is not a corollary to the provision stating that it would be a breach of the contract for the Yeager Company to enter bankruptcy. The Referee's contention can be supported by no theory of mutuality of contract provisions, and the clear language of Paragraph 16 of the contract does not provide a basis for such an interpretation. The relevant language of Paragraph 16 is that "Marshall and Mendel shall be entitled to any reasonable damages by reason of the breach of Yeager, and Yeager shall be entitled to any reasonable damages by reason of breach by Marshall and Mendel." There is nothing within this language or its context that indicates that the phrase "any reasonable damages" was intended to limit recovery to the cost of removal of petitioners' merchandise and equipment from the store.

Therefore, this Court is forced to reverse the Referee's conclusion that the maximum damages to which the petitioners could be entitled, under Paragraph 16 of their license contract, would be the cost of removing their goods from the store.

The Referee concluded that at no time following the bankruptcy did the petitioners notify the Trustee that they considered the bankruptcy to have been a breach of the license contract. The Ref-

eree found that the petitioners continued doing business in the store while it was under the operation of the Trustee, and that they insisted that their department be included in the general advertising which was conducted by the Trustee.

The findings of fact and conclusions of law by the Referee indicate that one reason for his disallowance of the petitioners' claim was a finding that petitioners, by continuing to operate their department and by failing to notify the Trustee of their reliance on the breach, had elected to waive the contract provision that bankruptcy would be a breach of the contract. If this was the Referee's conclusion, it also must be reversed.

■ The petitioners' supposed failure to notify the Trustee that they considered the contract breached, and their continued operation until the store was closed, could not have been an election to waive the breach because petitioners did not have a choice between immediately terminating the contract and continuing with full performance. Professor Williston, in his treatise on contracts, (Jaeger, 3rd Ed.), Section 683, says, in discussing when an election takes place:

> " * * * where a contract is breached in the course of its performance, the injured party has a choice presented to him of continuing the contract or of refusing to go on."

There was no such choice in this case, because the bankruptcy of Yeager made it impossible to continue with full performance of the contract. See also 11 O.Jur. 2d, Contracts, Section 265.

It is impossible to say that petitioners' failure to notify the Trustee that they considered the bankruptcy to have been a breach of the contract was a waiver of the breach. As the Ohio Supreme Court said in The List & Son Co. v. Chase, 80 Ohio St. 42, 49, 51, 88 N.E. 120 (1909):

> "A waiver is a voluntary relinquishment of a known right. It may be made by express words or by conduct which renders impossible a perform-

ance by the other party, or which seems to dispense with complete performance at a time *when the obligor might fully perform*. (Emphasis added.)

> " * * * a waiver must be voluntary—that is, intentional, with knowledge of the facts and of the party's rights—or it must be implied from conduct which amounts to estoppel."

■ The petitioners' failure to notify the Trustee that they considered the contract breached by the bankruptcy cannot be raised by that official as an estoppel against the petitioners, because there is no evidence that the Trustee detrimentally relied upon the petitioners' failure to notify him of their position. Clearly there was no waiver upon these facts.

The Referee found that petitioners also sold certain toys, tools and lawn furniture at another store which they operated. He found that they had such items at the Bankrupt's store, but did not try to dispose of them through normal trade channels in an attempt to mitigate their losses. The petitioners strongly object to this finding. However, on page 12 of his brief, the Trustee says:

> " * * * the question of mitigation of damage is not put in issue by the finding of the Referee, although petitioners appear to have assumed this to be the basis for the finding."

This Court understands from this statement that the Trustee does not contend that the petitioners are barred from recovery because they failed to use reasonable efforts to mitigate their damages, and therefore the question will not be discussed further.

It appears that the principal basis for the Referee's disallowance of petitioners' claim was his finding that petitioners had failed to prove that the losses were caused by the bankruptcy. The Referee evidently concluded that the losses were, at least in part, caused by other merchandising difficulties. He said:

> " * * * the claimant is assuming to claim that the Yeager Company

and the Trustee should be insurers by the terms of the agreement of any possible inventory loss [accruing to petitioners] when in fact their own sales records do not indicate a profitable operation."

In view of the confusion which has arisen upon the damage question, the Court is constrained to enter upon an extensive examination of the theory of damage awards.

Analysis of contract damages is considerably aided by categorizing the interests which a plaintiff is seeking to protect into at least three classifications. Such categorization has become far more prevalent since Professor Fuller's monumental article, The Reliance Interest in Contract Damages, Fuller & Perdue, 46 Yale L.J. 52, 373 (1936). That work has considerably assisted the courts in understanding the problems involved in contract damage claims.

Perhaps the most common recovery sought in contract cases is a reimbursement for damage to what is known as the plaintiff's expectation interest. In such instances, a plaintiff is awarded a judgment equaling (1) the otherwise uncompensated expenses that he has incurred in preparation for and partial performance of the contract, plus (2) the profits which he would have realized had the contract been fully performed. A damage award compensating a plaintiff's expectation interest results in placing him in the position he would have been in had the contract been successfully completed.

In certain other cases a plaintiff is merely seeking protection of his restitutionary interest; that is, he requests that benefits which he has conferred upon the other party be returned to him (and as a corollary he returns such benefits as may have been conferred upon him by the other party). The purpose of restitution is to place the parties as nearly as possible in the position they would have been in had the contract never been entered.

In still other cases a plaintiff is seeking damages to protect what is known as his reliance interest, that is, compensation for amounts otherwise uncompensated which he has spent in preparation for and partial performance of the contract. An award of damages which protects a plaintiff's reliance interest differs principally from an award which protects his expectation interest in that a reliance recovery, unlike an expectation recovery, includes no reimbursement for lost anticipated profits. Similarly, a reliance award differs from restitutionary award in that in a reliance recovery, unlike a restitutionary recovery, the plaintiff is compensated for expenditures which conferred no benefit upon the other party.

With this general discussion of the various interests which a plaintiff may seek to protect when he is seeking damages for breach of a contract, the Court turns to the case at hand, re-emphasizing that the petitioners herein are seeking protection of their reliance interest only. They are not seeking compensation for lost profits but only reimbursement for the amounts, spent in pursuance of this contract, which exceeded their income. The Referee disallowed their claim principally upon the basis that there was no proof that the Bankrupt's breach caused these losses. In rejecting this claim, the Referee was in error.

Section 333 of the Restatement of Contracts expressly provides that reliance damages are recoverable. The comment to that section states:

"Expenditures by the plaintiff in part performance * * * are not losses caused by the defendant's breach. In general, they are incurred before the breach takes place; if they are incurred after the breach the plaintiff is generally denied any reimbursement for them, since they are reasonably avoidable consequences."

See also Corbin on Contracts, Section 1031, and Palmer, The Contract Price as a Limit on Restitution for Defendant's Breach, 20 O.St.L.J. 264 (1959). Although these expenditures were not caused by the breach, the assumption is

that they were transformed into losses by the breach.

Perhaps the reason why most plaintiffs seek damages covering their full expectation interest is that, naturally enough, they prefer to recover anticipated profits in addition to expenses. However, if, for a variety of reasons, a plaintiff is unable to prove what his actual profits would have been, then recovery of his out-of-pocket expenses, that is, the protection of his reliance interest, is preferable to no recovery at all. As Professor Corbin has said in his treatise on the law of contracts, at Section 1031:

"*  *  * There is usually little difficulty, however, in proving what has already been expended by the plaintiff prior to the date of breach by way of preparation and part-performance. The fact that profits are too uncertain for recovery does not prevent a judgment in favor of the plaintiff for the amount of his expenditures.

"*  *  * recoverable damages are not restricted to the profits that would have been made by full performance. They include losses as well; but expenditures by the plaintiff in part performance or in preparation therefor are not losses caused by the breach of the contract. Instead they are actually caused by the making of the contract. *  *  * Expenditures in preparation and part performance are recoverable as an alternative measure of gains *  *  *."

Although the categorization of various damage claims into groupings of those which seek to protect restitutionary, reliance or expectation interests may be a comparatively recent development, the courts have long recognized a plaintiff's right to recover damages to protect what is known as his reliance interest. For instance, in Hill v. Anderson, 9 Ohio Dec. 480 (1899), the Court said:

"The problematical nature of what plaintiff's profits might have been under the contract, if it had been carried out, may bring his case within the rule of remoteness and bar any recovery so far as the value of his contract was concerned. If such should turn out to be the case, plaintiff would then be entitled to reimbursement for all of the expense he has been put to in preparing his own side for the execution of the contract *  *  *."

To a like effect see Herzstam v. Unit Steel Corp., 27 Ohio N.P., N.S., 300 (1928), and the cases cited therein, and Stribley v. Welz, 8 Ohio Cir.Ct.R. 571.

Perhaps the most cogent summary of this area of the law of contracts is contained in the Restatement of Contracts, Section 333:

"The amount of the plaintiff's expenditure, reasonably made in performance of the contract, or in necessary preparation therefor, is included in compensatory damages, with the following limitations:

"(a) Such expenditures are not recoverable in excess of the full contract price promised by the defendant.

"(b) Expenditures in preparation are not recoverable unless they can fairly be regarded as part of the cost of performance in estimating profit and loss.

"(c) Installments of the contract price already received and the value of materials on hand that would have been consumed in completion must be deducted.

"(d) If full performance would have resulted in a net loss to the plaintiff, the amount of this loss must be deducted, the burden of proof being on the defendant."

Subsection (a), providing that reliance damages are not recoverable in excess of the full amount of the contract price, does not bar a plaintiff from a complete reimbursement of his reasonable reliance expenditures upon the excuse that the full contract price is uncertain or is likely to be small. For instance, in the illustrations following this section of the

Restatement, the following situation is discussed:

"'A' insurance company contracts with 'B' to give 'B' the exclusive agency in a state for ten years and to pay him a commission on the amount of business done. If, following 'B's' part performance, 'A' breaches the contract, 'B' can obtain judgment for the amount of his reasonable office and traveling expenditures although that judgment cannot be in excess of the full amount of the commissions that he would have earned."

The important fact in this illustration is that the necessary uncertainty of the amount of the commission does not bar a recovery.

Likewise, Professor Corbin, in Section 1031, supra, gives the illustration of an employer who has contracted with an agent for the making of sales on a commission:

"* * * if the agent is wrongfully discharged before it can be determined what his profits would have been from full performance but after he has expended money in advertising, in soliciting, in preparing offices and sales rooms, or otherwise, the agent can get judgment for these expenditures insofar as they were reasonable."

■ It is evident from the Referee's findings of fact and conclusions of law that he found one of the most troublesome aspects of the petitioners' case to be what he considered their insistence that the Bankrupt be an insurer of their business enterprise. It was because of this problem that Subsection (d) was inserted in Section 333 of the Restatement. That subsection provides, in effect, that, while a plaintiff has the burden of proving his reliance expenditures, if the defendant wishes to show that the plaintiff would have had a net loss upon the transaction had it been completed according to the terms of the contract, the burden is upon the defendant to prove such loss.

The thrust of this subsection is that, while it is true that a plaintiff should be compensated for expenditures he has made attempting to carry out the terms of a contract which has been breached by the defendant, he should not be able to use the defendant's breach as a means of avoiding a loss which he otherwise would have had upon the transaction. Thus, if a full performance of the contract would have meant that he would lose $10,000, he ought not to be able to avoid that loss because he had the good fortune to make a contract with a defendant who later breached the agreement. Behind this position appears to be a feeling that protection of a party's reliance interest should not place him in a better position than he would have been in if the defendant had fully performed the bargain.

As Professor Fuller has so cogently stated in his article, supra:

"All of these points are contained by implication in a very simple formula: *'We will not in a suit for reimbursement for losses incurred in reliance on a contract knowingly put the plaintiff in a better position than he would have occupied had the contract been fully performed.'* (P. 79.)

"* * * the proposition that we will avoid conferring on the plaintiff advantages beyond those which performance of the contract would have involved carries the further corollary that there should be deducted from the plaintiff's recovery any losses he would have suffered had the contract been performed. If a contractor sues for reimbursement for $5,000 spent in partial performance of a contract on which he would have lost $1,000 had he been permitted to complete it, probably most courts would award the plaintiff only $4,000." (P. 79.)

The Ohio courts early adopted the position that it was the duty of the defendant to prove that the plaintiff was engaged in a losing transaction and to further prove the extent of that loss before it would be deducted from the plaintiff's

recovery. Kiralfy v. Macauley, 17 Weekly Law Bulletin 331, 333 (1887):

"\* \* \* where one of the parties after a contract is made, incurs certain expenses, reasonable in amount, which both parties had in contemplation at the time the contract was made as necessary to its performance, he is not only entitled to recover profits, if he can prove any, which would be what he would get over and above expenses; but that he is also entitled to recover expenses, properly so called, money which, when expended, is lost, unless the enterprise proceeds. \* \* \* if the one party wants to recover profits, the burden is on him to show that there would have been profits; if the other party wants to insure himself from the consequences of a willful breach of his contract by showing a loss; that is to say, that if the contract had been performed the other party would not have recovered what he had expended, the burden is on him to show it. It certainly is consistent with the general rules of law and presumption, that the party alleging a thing shall prove it; one party says, there would have been profits, let him prove it; the other says there would have been a failure to pay the expenses in whole or in part, let him prove it."

The same result was reached by Justice Pitney in Holt v. United Security Life Insurance Co., 76 N.J.L. 585, 72 A. 301, 21 L.R.A.,N.S., 691:

"But, where one party repudiates, and thus prevents the other from gaining the contemplated profit, it is not, we think, to be presumed in favor of the wrongdoer (in the absence of evidence) that complete performance of the agreement would not have resulted in at least reimbursing the injured party for his outlay fairly made in part performance of it. \* \* \* And it seems to us, upon general principles of justice, that, if he who, by repudiation, has prevented performance, asserts that the other party would not even have regained his outlay, the wrongdoer ought at least to be put upon his proof."

A very recent exposition of this same legal conclusion was given by Justice Learned Hand in L. Albert & Son v. Armstrong Rubber Co., 178 F.2d 182, 17 A.L.R.2d 1289 (2nd Circuit, 1949). In that case the buyer of rubber refiners had installed certain foundations at a cost of $3,000. When the seller breached the contract and the buyer refused to accept delivery of the refiners, the buyer claimed that it was entitled to recover the cost of the foundations upon the theory that it had expended such amounts in reliance upon the seller's performance of the contract. Judge Hand said, at page 189:

"In cases where the venture would have proved profitable to the promisee, there is no reason why he should not recover his expenses. On the other hand, on those occasions in which the performance would not have covered the promisee's outlay, such a result imposes the risk of the promisee's contract upon the promisor. We cannot agree that the promisor's default in performance should under this guise make him an insurer of the promisee's venture; yet it does not follow that the breach should not throw upon him the duty of showing that the value of the performance would in fact have been less than the promisee's outlay. It is often very hard to learn what the value of the performance would have been; and it is a common expedient, and a just one, in such situations to put the peril of the answer upon that party who by his wrong has made the issue relevant to the rights of the other. On principle therefore the proper solution would seem to be that the promisee may recover his outlay in preparation for the performance, subject to the privilege of the promisor to reduce it by as much as he can show that the promisee would

have lost, if the contract had been performed."

Upon these facts it is evident that the petitioners are entitled to prove a claim for reliance damages in an amount equal to their total reasonable costs in preparation for and performance of this contract, minus the amounts they received thereunder. The Trustee is entitled to reduce the damage claimed by the amount which he can prove the petitioners would have lost on this venture. The petitioners will then be entitled to an allowable claim for the net amount.

The decision of the Referee will be reversed and the case will be remanded for further proceedings in accordance with this memorandum.